IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALLY THOMPSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 7:06-cv-191-R |
| | § | |
| WICHITA FALLS | § | |
| INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Wichita Falls Independent School District's Motion for Summary Judgment. After careful consideration of all parties' submissions and the applicable law, the Court **DENIES** Defendant's motion.

**I. Background**

Plaintiff, Sally Thompson, has sued her former employer, Wichita Falls Independent School District, alleging she was fired because she was too old. Thompson claims the termination is a violation the Age Discrimination in Employment Act (ADEA).

Thompson is 71 years old. Thompson was employed by WFISD as a tutor for three years – from 2000-2001 through the 2003-2004 school year. Beginning with the 2003-2004 school year and continuing through the 2005-2006 school year, Thompson was employed as a full-time 7th and 8th grade special education teacher at Bartwise Junior High School in the WFISD. Linda Muehlberger was the principal of Bartwise Junior High School during those years. As principal, Muehlberger was responsible for hiring and working with teachers at Bartwise Junior High

1

School.

The Professional Development Appraisal System (PDAS) is an appraisal system used to evaluate Texas teachers. The process combines an observation of the teacher in the classroom for at least 45 minutes and written documentation concerning the teacher's performance throughout the year. Together the entire process creates the teacher's "Summative Annual Appraisal." Both Muehlberger and Dawson Orr, Superintendent of WFISD, agreed that the PDAS appraisal is a good judge of a teacher's performance. Thompson was given ratings of "Exceeds Expectations" or "Proficient" in all of the fifty performance categories in her Summative Annual Appraisals for the 2003-2004 and 2004-2005 school years. Included in these appraisals were ratings of "Proficient" in all three categories under Domain VII (Compliance with Policies, Operating Procedures, and Requirements).

Kristie Weilage, was an educational diagnostician at Bartwise Junior High School during the three years that Thompson was employed as a special education teacher. As an education diagnostician at Bartwise Junior High School, Weilage was responsible for certain aspects of Admission, Review, Dismissal (ARD) meetings. Federal law requires an ARD meeting occur annually for every special education student in order to create and evaluate that student's Individual Education Program (IEP). Orr testified that diagnosticians serve to monitor the ARD committees and ensure that the rules and regulations of the Texas Education Agency are followed.

Thompson alleges that Weilage had, during the Spring semester of the 2004-2005 school year, made statements to her that she was "too old" to still be working and that she "ought to retire." In early May 2005, Weilage got "very upset" and "angry" with Thompson "because she

2

had made so many mistakes" in her ARD paperwork. Weilage and Thompson met and Weilage mentioned to Thompson that she "ought to retire." This meeting was later documented in a May 26, 2005, memorandum from Weilage to Muehlberger where Weilage wrote:

> ***Sally became angry when I talked to her about retiring again***. If she doesn't change her mind, I would like to suggest a plan of improvement to include intensive training on ARD forms, researching special education legal issues, take computer literacy workshops to include CLASS and the Grade Book, and referring to our "Blue Book" with samples and explanations of all special education procedures in WFISD. If she is employed at Bartwise, she will need close supervision.

(Emphasis added.)

Weilage gave the memorandum to Muehlberger and they discussed it at the end of the 2004-2005 school year. At the outset of the 2005-2006 school year, Muehlberger asked Weilage to notify her of Thompson's mistakes in the paperwork and in conducting ARDs. As a result, Weilage began compiling monthly "documentation" on Thompson in September 2005. The documentation continued until February 2006 and totaled 117 pages. Weilage gave the documentation to Muehlberger on a monthly or bi-monthly basis. None of this paperwork was ever given to Thompson.

Weilage testified that she wrote a similar memorandum criticizing the performance of another special education teacher, Harry Moore. But Weilage did not compile documentation on him because he "created a growth plan for himself and how he would improve. He did it [the plan] during the summer and was sharp and ready to go the 05-06 school year." Thompson requested copies of Weilage's memorandum concerning Moore, and a copy of Moore's "growth plan" but it was never provided by WFISD.

3

Right after the memorandum, Thompson expressed concerns to Muehlberger on more than one occasion that Weilage was trying to force her to retire. Muehlberger says she gave no credence to these concerns because she did not believe Thompson. Muehlberger testified that she did not take Thompson's allegations seriously because Weilage was not Thompson's supervisor.

The only other documented incident of Thompson's poor performance was on May 26, 2005, when Muehlberger received a letter from a parent criticizing Thompson, Weilage and Assistant Principal Allen. The student was not one of Thompson's students, but Thompson was on the student's ARD committee. The parent was upset because her son had failed English and would be held back unless he attended summer school. Thompson had failed to check the box on the on the student's IEP, indicating the student needed "extra time to complete assignments," even though the accommodation was discussed at the student's ARD meeting. The parent thought that her son would have passed English had he been given extra time. A meeting was held with the parent, and Muelberger changed the student's failing grade to a passing one.

In November 2005, Muehlberger placed Thompson on a "growth plan," which is also known as an "intervention plan." Thompson objected to the plan but completed all of the requirements.

On March 8, 2006, Muehlberger wrote a memorandum to Debbie Osborne, Human Resources Director of WFISD, recommending that Thompson "not be issued a contract for the 2006-2007 school year" because "although Mrs. Thompson fulfilled the requirements for intervention included in her plans, she has continued to make critical mistakes in special education paperwork and procedures." On March 22, 2006, Orr recommended to the WFISD

4

School Board that Thompson's employment be terminated. The School Board voted that same day to terminate Thompson's employment at the end of the 2005-2006 school year. Thompson filed a grievance with the district, but an internal investigation ruled that age was not the motivating factor in the termination of her contract. Meanwhile, on April 13, 2006, Thompson received her Summative Annual Review for the 2005-2006 school year, which Muehlberger testified was "good." In Domain VII, Thompson was given ratings of "proficient" in all three categories.

Subsequently, Thompson filed an age discrimination case with the EEOC. On July 13, 2006, the EEOC issued its determination that "there is reasonable cause to believe that [WFISD] discriminated against [Thompson] due to [Thompson's] age, as alleged." Accordingly, they issued a right to sue letter.

## II. Analysis

Defendant seeks summary judgment on Thompson's ADEA claim. Specifically, Plaintiff asserts that WFISD terminated her at the end of the 2005-2006 school year because of her age. Defendant contends the undisputed summary judgment evidence demonstrates that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Furthermore, the Defendant claims that no direct evidence exists to prove age discrimination and that Thompson's circumstantial evidence is insufficient to create a genuine issue of material fact.

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interogeratories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). An issue is material if its resolution would affect the outcome of an action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As long as there appears to be some support for the disputed allegations, such that "reasonable minds could differ as to the import of evidence," the motion must be denied. *Anderson*, 477 U.S. at 250. When deciding whether a fact issue has been created, the facts and inferences drawn from those facts must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

      The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If the moving party satisfies this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

      The Court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find, by a preponderance of the evidence, that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Plaintiff's ADEA Claim

The ADEA provides that "it shall be unlawful for any employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). ADEA disparate treatment claims are analyzed in the same manner as Title VII disparate treatment claims. *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

Employment discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 f.3d 572, 578 (5th Cir. 2003)(citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000), *cert. denied,* 535 U.S. 1078 (2002). The analysis the Court should utilize depends on which type of evidence the plaintiff offers. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). If the employee presents solely circumstantial evidence to establish an inference of discrimination, the Court will apply the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, when a plaintiff attempts to present direct evidence of an adverse employment decision the *McDonnell-Douglas* test is inapplicable. *See Thurston*, 469 U.S. at 121; *see also Rachid*, 376 F.3d at 309.

Thompson claims that she has shown both direct and circumstantial evidence of discrimination.

**1. Thompson has not shown direct evidence of discrimination.**

Direct evidence is evidence which, if believed, proves the fact in question without any inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). In the employment context, direct evidence includes "any statement or document which shows on its face that an improper criterion served as a basis – not necessarily a sole basis, but a basis – for [an] adverse employment action." *Id.* But "if an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct." *Wilbur v. Tharaldson Employee Mgmt. Co.,* 2005 WL 3018262 *6 (N.D. Tex. 2005)(*citing Sandstad v. CB Richard Ellis*, *Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002)).

The parties dispute whether Thompson has presented sufficient direct evidence of discriminatory animus as a substantial motivating factor in her termination.  Thompson claims that the memorandum from Weilage to Muehlberger, in which she admits to making ageist comments, proves that age was a motivating factor.  Additionally, Thompson alleges through her affidavit that she informed Muelberger of her concerns about Weilage's comments on other occasions.  In response, WFISD claims that Weilage's comments were merely "stray remarks" which do not constitute evidence of discrimination under Fifth Circuit case law. *See Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992)(holding that "stray remarks" are insufficient to establish discrimination); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991).

In order for comments to constitute direct evidence of discrimination, they must meet the four-prong test set forth by the Fifth Circuit in *Brown v. CSC Logic*, *Inc.*, 82 F.3d 651 (5th Cir. 1996). *See Laxton*, 333 F.3d at 583 n.4 (5th Cir. 2003); *Auguster v. Vermillion Parish Sch. Bd.*,

249 F.3d 400, 405-06 (5th Cir. 2001). Specifically, the remark must be (1) related to the protected class at issue, (2) proximate in time to the employment decision at issue, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *See Auguster*, 249 F.3d at 405-06 (citing *CSC Logic*, 82 F.3d at 655).

Here, WFISD argues that Weilage's remarks were not made by an individual with authority over the employment decision at issue. Thompson replies by relying on the Fifth Circuit's decision in *Palasota v. Haggar Clothing Co.,* which held that age-related remarks should be taken into account even if not uttered by the decision maker, provided that the individual is in a position to influence the decision. 342 F.3d 569, 578 (5th Cir. 2003) (*citing Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000)). But in *Palasota* and *Russell* the Court analyzed the weight of the non-supervisors' comments under the *McDonnell-Douglas* burden-shifting test used to analyze circumstantial evidence. While there is certainly evidence that Weilage was possibly in a position to influence Muehlberger's decision, a jury would have to draw an inference from the evidence to come to that conclusion. Consequently, the Court finds that while the amount of weight to be given to a non-supervisor's influence is ultimately a question the jury should consider, it is not applicable to the direct evidence analysis. Therefore, because Weilage was not officially in a position to influence the adverse employment decision, any evidence that she influenced Muelberger's decision must be analyzed as circumstantial evidence. *See Sanstad*, 309 F.3d at 897-98 (holding that if an inference is required, the evidence is circumstantial, not direct).

Additionally, WFISD argues that the comments were not proximate in time to the

employment decision because the May 2005 memorandum was given almost a year prior to the decision to not renew Thompson's contract.  Thompson counters by arguing that no documentation existed of any "purported deficiencies in Plaintiff's performance" until the May 2005 memorandum, and the memorandum is why the "copious monthly documentation" was compiled.  Thompson also suggests that she was not terminated until the end of the year because her contract was probationary, which allowed the district to terminate her contract "in the best interest of the school district," instead of finding "cause" to fire her.  Like the "stray remarks" argument, both of these arguments require inferences.  As such, this evidence must analyzed as circumstantial evidence.

Because the evidence would force a jury to draw inferences in order to come to any conclusions that discrimination occurred, Thompson has failed to provide any direct evidence of discrimination.  The Court now turns to whether she has provided sufficient circumstantial evidence to create a genuine issue of material fact.

**2. Thompson has provide circumstantial evidence of discrimination.**

When direct evidence of discrimination is lacking, courts analyze the claims under the *McDonnell-Douglas* burden-shifting framework to determine whether a genuine issue of material fact exists that discrimination occurred. *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 141-42 (2000); *Machinchick*, 398 F.3d at 350.  The "modified" *McDonnell-Douglas* framework requires first that the employee demonstrate a *prima facie* case of discrimination by a preponderance of the evidence. *See Desert Palace v. Costa*, 539 U.S. 90 (2003); *Rachid*, 376 F.3d at 312.  To show a prima facie case of age discrimination under the ADEA, a discharged employee must show that he or she: (1) was discharged; (2) was qualified

10

for or competently performing in the position held; (3) was within the protected class at the time of the discharge (e.g. over 40 years of age); and (4) was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his or her age. *Rachid*, 376 F.3d at 309.

If the plaintiff-employee meets this initial burden, an inference of intentional discrimination arises, and the burden shifts to the employer-defendant to articulate a legitimate, nondiscriminatory reason for the its decision to terminate the plaintiff. *Reeves*, 530 U.S. at 142; *Desert Palace*, 539 U.S. at 90; *Rachid*, 376 F.3d at 312. At this point, the employer's burden "is one of persuasion: it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Once the defendant produces a legitimate, nondiscriminatory reason for the adverse employment action, "the inference of discrimination disappears and the plaintiff must meet his ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick,* 398 F.3d at 350. As a result, the burden shifts back to the plaintiff to show either (1) the defendant's reason is not true, but is instead designed to serve as pretext from unlawful discrimination; or (2) the defendant's reason, even if true, is only one of the reasons for the adverse action and that age is nevertheless a "motivating factor" for the adverse action. *Machinchick*, 398 F.3d at 351-52; *Rachid*, 376 F.3d at 312.

Both parties agree that Thompson has made a prima facie showing and that WFISD has provided a legitimate, nondiscriminatory reason for the adverse employment action. Therefore, the issue centers around whether Thompson has provided sufficient evidence to prove that WFISD's reason was pretext, or if it was not pretext, whether age was a "motivating factor" for

11

WFISD's decision to terminate her contract.

### a. Thompson met her summary judgment burden on the issue of pretext.

Thompson may defeat WFISD's motion for summary judgment if she can show, by substantial evidence, that WFISD's rationale for terminating her contract – i.e., critical mistakes in special education paperwork and procedures – is pretext for age discrimination. *See Reeves*, 530 U.S. at 143; *Rachid*, 376 F.3d at 312. To prove pretext, Thompson must produce evidence that would permit a jury to disbelieve that WFISD's proffered reason was its true motivation. *See Laxton*, 333 F.3d at 579. "The factfinder's disbelief of the reason put forward by the defendant (particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Reeves*, 530 U.S. at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511); *Laxton*, 333 F.3d at 579.  In determining whether a plaintiff has provided sufficient evidence of pretext to proceed to trial, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)(quoting *Reeves*, 530 U.S. at 148-49.)  In a few situations, a defendant may be entitled to summary judgment "if the record conclusively reveal[s] some other, nondiscriminatory reason for the [adverse] decision, of if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination has occurred." *Reeves*, 530 U.S. at 148.

Thompson rebuts WFISD's proffered justification for her discharge with evidence that the justification is not true.  WFISD asserts that Thompson had problems and made mistakes in

12

special education paperwork and procedures from the very beginning of her employment as a Special Education teacher at Bartwise Junior High School.  Yet there is no documentation of these deficiencies until May 2005.  In fact, Thompson's evaluations for the 2003-20004 and 2004-2005 school years were excellent, with ratings of "Exceeds Expectations" or "Proficient" in every performance category, including Domain VII (Policies and Procedures).  Furthermore, if the purpose of the documentation was to identify Thompson's deficiencies so that she could remediate them, as WFISD contends, then why was none of the "documentation" ever shared with Thompson?  Certainly, a jury could reasonably infer, as the EEOC did, that Thompson's trouble began only after the discriminatory comments were made.

If Thompson did need to improve in the area of special education paperwork and procedure, she did so by completing the requirements of the "growth plan."  But even after successfully completing the requirements of the "growth plan," Muehlberger recommended that Thompson's contract not be renewed.  Then a month later, Muelberger reversed field and gave Thompson a "good" written appraisal for the 2005-2006 school year.  Therefore, a jury could reasonably infer that firing Thompson was not performance related, but based on her age.

Finally, WFISD argues that since Thompson was hired and terminated by the same person, an inference is created that discrimination was not a determining factor for the adverse action of the employer.  But the "same actor" doctrine only creates an inference of a lack of discriminatory animus, which "can be overcome by sufficient evidence that the stated reason for the termination was pretext for age discrimination." *CSC Logic*, 82 F.3d at 651.  The Court finds there is  sufficient evidence in the record to overcome the inference.  Consequently, Thompson has provided sufficient evidence to prove a genuine issue of material fact exists as to whether

WFISD's legitimate, nondiscriminatory reason was pretext.

### b. Thompson has met her summary judgment burden on mixed motives.

Thompson may also defeat WFISD's motion for summary judgment by presenting evidence that WFISD's reason for her termination, even if true, was only one of the reasons for her termination, and that her age was another "motivating factor." *See Machinchick*, 398 F.3d at 352 (relying on *Desert Palace*, 539 U.S. at 101); *Rachid*, 376 F.3d at 312. To succeed on a mixed-motives theory, "the plaintiff must prove that age actually played a role in and had a determinative influence on the employer's decision-making process." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). If a plaintiff is able to show that age was a motivating factor in the employment decision, "it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus." *Rachid*, 376 F.3d at 312.

Thompson contends that various age-related comments made by Weilage are sufficient circumstantial evidence to create a genuine issue of material fact whether her age was a "motivating factor" in her termination. WFISD responds by reiterating that since the comments were not made by a supervisor and were not proximate in time, they do not show discriminatory animus. But unlike direct evidence, circumstantial evidence need not be held to such a strict standard. *Rachid*, 376 F.3d at 311 (holding that direct evidence of discrimination is not necessary to receive a mixed-motive analysis for an ADEA claim).

Under a mixed-motive analysis, "stray remarks" made by a non-supervisor may be considered to determine whether a genuine issue of material fact exists that age was a "motivating factor" in the adverse employment decision. *Palasota*, 342 F.3d at 578 (relying on

*Russell*, 235 F.3d at 229)(holding that "age related remarks 'are appropriately taken into account when analyzing the evidence,' even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision"). A jury could reasonably infer that Weilage was in a position of influence. Orr testified that diagnosticians served in a coordinating role with regard to special education in the district. There was no evidence of Thompson's alleged deficiencies until May 2005, and Thompson was not placed on an "improvement plan" until it was suggested by Weilage. Furthermore, Muehlberger placed Weilage in charge of monitoring Thompson's progress. Thus, a genuine issue of material fact exists as to whether Weilage influenced Muelberger's decision to terminate Thompson's contract and whether that decision was based on Thompson's age.

  WFISD has not provided any evidence that the same adverse employment decision would have occurred regardless of the discriminatory animus. To the contrary, Thompson has provided evidence, the declaration of an expert witness, that Thompson's errors were not sufficient to warrant termination. This testimony only solidifies the conclusion that Thompson has provided sufficient evidence to create a genuine issue of material fact as to whether age was a "motivating factor" in the adverse employment decision.

### III. Conclusion

For the reasons stated above, the Court **DENIES** Wichita Falls Independent School District's Motion for Summary Judgment.

**IT IS SO ORDERED**

**ENTERED: June 29, 2007**

_____
**HON. JERRY BUCHMEYER**
**SENIOR UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**